IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AL KENNETH SCOTT, | ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:11cv586-WHA |
| DERRICK MAULL, et al., | ) ) (wo) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on a Motion to Dismiss (Doc. #25), filed by Defendant Derrick Maull ("Maull").  The Plaintiff, Al Kenneth Scott ("Scott"), filed an Amended Complaint (Doc. #17) bringing claims against Lowndes County, former Sheriff Charlie Williams ("Williams"), former Investigator Derrick Maull, and former Chief Deputy Lenny Lee ("Lee"), as well as an unnamed insurer of Lowndes County.  Defendant Lowndes County was dismissed by this court's October 27, 2011 Order.  (Doc. #22).

The facts of the case arise out of an unauthorized sale of Plaintiff's truck to a third-party, and the Defendants' failure to return the truck to the Plaintiff.  The federal claims asserted are brought pursuant to 42 U.S.C. § 1983 and include: Count A – failure to enforce the law, Count B – unreasonable seizure, Count C –  violation of due process, and Count D –  failure to intervene.  The state law claims are Count E – conversion and Count F – trespass to chattels.

Maull has now moved for dismissal of the claims against him on the basis of qualified immunity as to the federal claims, and absolute immunity as to the state law claims.  Scott filed a Response to Maull's Motion to Dismiss (Doc. #30) on January 3, 2012, and Maull filed a Reply

to Scott's Response on January 9, 2012. (Doc. #31).

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED.

## II.  MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See  Ashcroft v. Iqbal,* _ U.S. _, 129 S.Ct. 1937, 1949-50 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Id*. (citation omitted).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The factual allegations  "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## III.  FACTS

The allegations of Scott's Amended Complaint are as follows:

In November, 2009, Scott had two men tow a Ford Expedition truck he purchased for his daughter so that the truck could be serviced.  The truck was towed to Carnes Park Service Station in Hayneville, Alabama.  In February 2010, the son of the owner of the mechanic shop

2

asked Scott if he would sell him the truck.  Scott declined but was later informed that the man forged Scott's name on the title and sold the truck to Sherryl Jackson ("Jackson").

When Scott learned of this sale, he reported the truck stolen to the Lowndes County Sheriff Department on May 21, 2010.  Defendant Maull told Scott that the truck was listed as stolen in the NCIC database and that law enforcement officers would be looking for it.

Another deputy informed Scott that the truck had been sold to someone on South Holt Street in Montgomery.  Subsequently, Scott's wife located the truck at a house on South Holt Street.  She called Scott and the Montgomery police, who met her at the house.  Scott showed the officer his paperwork and explained that he had a key to the truck.  The officer then left the house.  Scott attempted to start the truck, but it would not start.  Upon hearing and seeing Scott attempt to move the car, people began to approach and surround the truck.  The people were yelling that the truck belonged to Jackson.

Scott and his wife called the police department, and officers reported to the scene.  The officers explained that Scott was the rightful owner of the truck.  Moreover, Lee also arrived on the scene, and, once there, he had the truck towed to B&R Towing due to the hostile nature of the crowd.  A few days later Scott and his wife went to see Sheriff Williams, but had to wait for him to arrive.

While waiting, Maull arrived at the Sheriff's office and was upset because Scott had contacted Williams and Lee instead of him.  He then informed Scott that one of three things would happen: he would give the truck to Scott, he would give the truck to Jackson, or he would have the parts that Jackson added to the truck removed and give Scott the shell of the truck. Scott alleges that Maull flagrantly threatened to disregard the law and threatened to release the

3

car to Jackson instead of Scott, who is allegedly the rightful owner. At the conclusion of Scott and Maull's conversation, Maull told Scott that the truck would be released to him.

Later, Scott's wife called Williams and was told that Maull would call to tell them when they could get the truck. Scott did not hear from Maull, so his wife again called the Sheriff's office and spoke with a weekend supervisor. The supervisor seemed surprised to hear that Scott had not yet received the truck. Later that same day, Maull called and said in a threatening tone that he was going to have the motor and transmission taken out of the truck, the tires removed, and the radio removed before he returned it to Scott. Scott threatened to sue, but Maull expressed that he did not care because he would be leaving the job soon anyway.

Scott's wife called the Sheriff's office a few days later and spoke with Lee. Lee was surprised that Scott and his wife had not yet received the truck, and he ended the call so he could check on the status of the truck. Lee called back and informed Scott that Maull had given the truck to Jackson. Scott alleges that Maull had a personal problem with Scott stemming from Scott and his wife calling Maull's supervisors. Scott alleges that Maull's decision to give the truck to Sherryl Jackson instead of him was based on Maull's negative feelings towards Scott.

## IV. DISCUSSION

The court will first address the federal claims raised by Scott and Maull's corresponding defenses. Then, the court will address Scott's state law claims and the issue of absolute immunity under Alabama law.

### A. Federal Claims

Maull has moved for dismissal of the federal claims on two alternative grounds. First,

Maull contends that because Scott has alleged that Maull was motivated by personal animus, he was not acting under color of state law, and, therefore, Scott has failed to state a claim under § 1983. In the alternative, Maull argues that he is entitled to qualified immunity as to the claims. The court will address each argument in turn.

As to Maull's first argument, a public official may act under color of state law "even if he is not acting pursuant to state law, in performing a wrongful act which deprives another of his constitutional rights," if the official is able to do so by virtue of his position. *Morgan v. Tice*, 862 F.2d 1495 (11th Cir. 1989). If there is a misuse of public power, the "official who acts without legal authority is able to do so only because he is 'clothed with the authority of state law.'" *Id.* In *Morgan*, a public official went to a local newspaper, presented his business card as city manager, and made defamatory statements about another. The court held that he was not acting under color of state law. *Id.*

Maull also relies on *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981).[1] In *Delcambre*, an on duty police officer assaulted a relative on police property, but the court held that he was not acting under color of state law during that assault. 635 F.2d at 408. Maull argues that, like the *Delacambre* and *Morgan* defendants, the allegations show that he was not acting under the color of state law but as an individual.

Scott responds that Maull's interaction with Scott was based on his role in the investigation and, therefore, he was a state actor. The court agrees. Maull's action was to take a vehicle within the control of the state and give possession of that vehicle to another person. His

---

[1] The Eleventh Circuit adopted as precedent all Fifth Circuit opinions issued before November 3, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981).

actions were not an assault or a defamatory statement, but a transfer of property within control of the Sheriff's office.  Therefore, Maull's action was directly related to his role as an investigator for Sheriff Williams.  Accordingly, the court concludes that Scott has adequately alleged that Maull was acting under color of state law.

As to Maull's alternative argument, Maull argues that his actions are protected by qualified immunity because Scott has not demonstrated that he violated clearly established law. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir.1991).  As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.  *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).  Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler*  323 F.3d 872, 878 (11th Cir. 2003).

Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997).  In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Maull argues that two different people were claiming legal title to the same SUV and that this is supported by the Complaint and the attached affidavits. Moreover, Maull argues that a determination of whose title is best is a civil matter not a criminal matter. Therefore, Maull concludes that because title determination is a civil matter, his giving the truck back to one of the parties vying for superior title is not a violation of clearly established law.

Scott counters that Maull knew that Scott was the rightful owner of the truck, and yet Maull intentionally and maliciously returned the truck to Jackson instead of him. Scott argues that the allegations of the Amended Complaint are that Maull made a decision to give the truck to someone else even though he knew the truck was Scott's. The Amended Complaint, however, incorporates affidavits which Scott attached to the Complaint. One such affidavit is from Jackson, who states that Maull told her that a District Attorney told him that Jackson was the owner of the truck. She also discusses the improvements she made to the truck such as installing a motor, transmission, and fuel pump. Scott claims that all these allegations taken together demonstrate that Maull's conduct violated Scott's constitutional right to procedural due process.

Scott's claim boils down to two parts. The first is Maull's alleged negative personal animus, both bad faith and malice, towards Scott. The second is the actual procedural due process violation that Scott has alleged.

"The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004)). "In fact, the Defendants' 'subjective beliefs about the matter, however induced, are actually irrelevant to the inquiry.'" *Id.* (quoting *Sevigny v. Dicksey*, 846 F.2d 953, 957 n. 5 (4th

7

Cir.1988)).  Therefore, as to the bad faith and other subjective portions of Scott's claim, the court finds that those facts are not relevant to its qualified immunity analysis.

Accordingly, the court will limit its analysis of the facts only to the objective portion of the facts alleged.  These objective facts essentially boil down to the following: Scott's truck was sold without his permission, law enforcement attempted to return Scott's vehicle to him only to discover another individual with a claim of ownership over the truck, the parties could not agree on who owned the car, law enforcement towed the car away from both parties, law enforcement returned the car to the purchaser of the car, and, as far as this court can tell, the law enforcement officers have in no way impeded Scott's ability to bring a civil suit of conversion or trespass to chattels.

A claim of denial of procedural due process "requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347-78 (11th Cir. 2006) (*quoting Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003)).  Given that this court has just found that Maull is a state actor and that neither side appears to contest that Scott had a cognizable property interest, the only issues are whether that property right was deprived in the presence of constitutionally-inadequate process.

Even if this court were to find that there was a temporary deprivation of Scott's property right, Maull did not in any way adjudicate the rights of the parties involved.  There are no allegations that the Maull caused Scott to have a deficient proceeding nor are there any allegations that Maull prevented Scott from bringing his civil claims before an Alabama civil court.  Maull had the vehicle returned to the party who had possession of it when a dispute over

ownership broke out, and Scott can still bring suit in state court. If he is indeed the rightful owner under Alabama law, Scott can still be awarded his truck by an Alabama civil court.

It is worth noting that in *Jackson v. Hamm*, 78 F. Supp. 2d 1233 (M.D. Ala. 1999), another judge in this district addressed a similar issue, and found that an officer's decision to give the keys of a car to one of the alleged owners of that car was not a clearly established procedural due process violation. That court explained that the "[defendant] did not engage in any adjudication of ownership, nor did he in any way impair whatever interest [plaintiff] may have had in the car," and although the *Jackson* court was analyzing a slightly different issue, its reasoning is applicable to the case at bar. *Jackson*, 78 F. Supp. 2d at 1246.

Like the plaintiff from *Jackson*, Scott has not made out a procedural due process violation nor has he demonstrated that the violation of his property right was clearly established. Having found that Maull has not violated any clearly established right, the court finds that he is entitled to qualified immunity as to Counts A, B, C, and D.

## B. State Claims

Maull states that he is entitled to absolute immunity from the state law claims brought against him by Scott by virtue of Article I, § 14 of the Alabama Constitution which grants absolute immunity to Alabama sheriffs and deputy sheriffs. *See Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006) ("claims against sheriffs and deputy sheriffs are barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901.") (internal quotation omitted). Maul affirmatively denied relying on the state-agent immunity as developed in the progeny of *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), and, therefore, this court will limit its discussion only to the immunity provided by Article I, § 14 of the Alabama Constitution. (Doc.

9

#31 at 2).

The Alabama Supreme Court has explained that "the positions appointed by a sheriff of clerk, investigator, dispatcher, jailer, and process server 'traditionally revolve around limited objectives and defined duties and do not require those holding them to function as the alter ego of the sheriff or ensure that the policies and goals of the office are implemented.'" *Ex parte Shelley*, 53 So. 3d 887, 896 (Ala. 2009) (quoting *Terry v. Cook*, 866 F.2d 373, 378 (11th Cir. 1989)). It is the alter ego status of a sheriff's deputy which provides that deputy with the same absolute immunity as the sheriff. *Id.* Accordingly, Alabama Supreme Court precedent makes it clear that persons in those positions such as jailer or investigator who perform only a mere sliver of the functions of a sheriff are not granted the same immunity as the sheriff.

However, Ala. Code § 36-22-3(b) which was enacted in 2011, appears to extend the absolute immunity to certain employees of the sheriff's office which under current Alabama precedent would not be granted such immunity. § 36-22-3(b) ("Persons undertaking [duties contained in Ala. Code § 36-22-3(a)] for and under the direction and supervision of the sheriff shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901 . . .). There is not yet an Alabama case which addresses the interplay between the Alabama Supreme Court's interpretation of the Alabama Constitution and this new statute, and, as such, the determination of this issue presents a novel issue of state law. Because this court has only supplemental jurisdiction over Scott's state law claims pursuant to 28 U.S.C. § 1367, the court has discretion to decline jurisdiction pursuant to 28 U.S.C. § 1367(c). One such ground for declining jurisdiction is when the case presents a "novel . . . issue of State law," 28 U.S.C. § 1367(c)(1), which the present case does.

Therefore, pursuant to 28 U.S.C. § 1367(c)(1), this court will exercise its discretion to decline jurisdiction over Counts E and F against Maull and dismiss Counts E and F without prejudice so as to allow Scott to bring his state law conversion and trespass to chattels claims in an appropriate state court.

## V. CONCLUSION

For the foregoing reasons it is hereby ORDERED that

1. Defendant's Motion to Dismiss is GRANTED as to Counts A, B, C, and D and those claims are DISMISSED as to Derrick Maull, with prejudice.

2. Defendant's Motion to Dismiss is GRANTED as to Counts E and F and those claims are DISMISSED as to Derrick Maull, without prejudice.

Done this 24th day of February, 2012.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE